## UNITED STATES v. HEILMAN
(two cases).

Nos. 21759, 21760.

District Court, N. D. Ohio, E. D.

Nov. 9, 1943.

Don C. Miller, U. S. Atty., of Cleveland, Ohio, for plaintiff.

Paul Clarke, of Cleveland, Ohio, for defendants.

WILKIN, District Judge.

These two cases were combined for trial because they involve the same general questions of fact and law. The two defendants are husband and wife and what was done was done jointly. In a signed statement Hilda Heilman said that the ideas and intentions of Emil Heilman, as expressed in his written statement, were the same as hers. The complaints asked that the naturalization of the defendants be set aside because of fraud. The allegations of fraud were based on the statements that the defendants were not attached to the principles of the Constitution of the United States when their petitions for naturalization were filed, nor during the five-year period prior thereto; that the defendants did not intend to renounce absolutely and forever all allegiance and fidelity to the German Reich, but in fact intended to retain allegiance to it; that the defendants did not intend to reside permanently in the United States. The actions were brought by virtue of Section 738 of Title 8 United States Code Annotated.

The evidence fails to meet that degree of proof which is required in such cases. Schneiderman v. United States of America, 320 U.S. 118, 63 S.Ct. 1333, 87 L.Ed. 1796. If in compliance with the requirements of that decision the facts and law are "construed as far as is reasonably possible in favor of the citizens", then there is a complete failure of proof. If the things done by the defendants are considered in the light of Emil Heilman's explanation, and if the things said by them are considered in all the attendant circumstances and their limited comprehension of the legal significance of phrases employed in their statements, then their conduct should be interpreted as nothing more than an expression of some nostalgia for the land of their childhood and a natural concern for the welfare of their parents. It cannot be construed as a want of allegiance to their new country.

The defendants were residents of the same town in Germany and had known each other in their youth. After coming to this country they renewed that acquaintance and it led to marriage. Two children were born of the union, and they bought and improved a home in Akron, Ohio. The defendant Hilda Heilman entered the United States in 1929, filed her petition for naturalization in 1939, and took the oath of allegiance in 1940. The defendant Emil Heilman entered the United States in 1930, filed his petition for naturalization in 1935, and was admitted to citizenship in 1936. In 1938 the widowed mother of Emil came to visit them in this country. In March of 1941 the defendant Emil invested $3,000 in "Reichwanderer" marks and executed a power of attorney to his mother in Germany authorizing her to draw upon the credit established by him at the German bank. He testified that his purpose was to provide a fund for living

expenses for himself and his family when they returned to Germany for a visit and at the same time afford his mother some means of support in case of need. He explained that he and his wife had had no honeymoon at the time of their marriage and that they had pooled their savings with the expectation of taking a trip to Germany after the war.

Evidently that purchase excited an inquiry and investigation. The defendants were interviewed at their home and, with their consent, the home was searched. The defendants presented to the investigators a copy of Mein Kampf, and an illustrated calendar with scenes of Germany and portraits of high Nazi officials was found in a bureau drawer. It was also admitted that the defendants had been receiving a German newspaper and literature from the German library of Information (New York).

The defendant Emil said in his written statement that at the time he took the oath of allegiance he was willing to bear arms to defend the United States, but that he was not willing to go to German soil and fight against the German army there. He said he did not think the oath required him to do that. He said, however, that he was willing to fight against the German army if it came to the United States, and to fight against the German army and German people in any other country. He said at the time of making his written statement that he wanted the United States to win the war.

Such evidence is not sufficient to sustain the allegations of the complaints. While it does not reveal the kind of devotion to this country that the oath of allegiance contemplates, yet it cannot be said that the evidence is sufficient to warrant a finding that the certificate of naturalization was fraudulently obtained. The defendants had more feeling of attachment to their former country than the renunciation of all allegiance would indicate. But this court, on the evidence submitted, cannot find that the defendants were not attached to the principles of the Constitution, that they intended to retain allegiance to the German Reich, or that they did not intend to reside permanently in the United States. The complaints will therefore be dismissed.

Since what has been said disposes of the case, it is unnecessary to say anything more; but the court, in passing, feels constrained to point out that the defendants and other naturalized citizens would save themselves and the officers of this country much trouble if they did not surrender themselves to blind nationalistic emotionalism. Such an attitude as that of Heilman does much to justify the contention of those people who say that no distinction can be made between the German people and the Nazi leaders. In his written statement made February 1, 1943, Emil Heilman said: "I would prefer to have the war stop right now just as things stand, except that I do not think that Germany should keep all of France, but should keep Poland and Czecho-Slovakia." He said further: "I do not know whose fault it was that the United States got to fighting with Germany, but I think that the United States was not very fair or neutral in helping England in many ways and that it made many unfriendly acts to Germany which helped to start the war. I do not think that Germany did anything wrong."

A man who can make statements of that kind, with the undisputed record of the invasion of Czecho-Slovakia and Poland and the other countries before him, has allowed nationalism to blind him to all moral issues. Some sympathy for the people of his former country and some attachment to his own relatives is no doubt natural. But when one is so imbued with racial pride and arrogance that he does not distinguish between the people whom he knew and loved and the Nazi abomination, he produces only hatred for his former country—he cannot expect others to discriminate where he has failed to do so.

When the defendants understand better the American way of life—and this court believes that they wish to be good Americans—they will understand why we are at war with Germany. Our way of life is based not upon race or creed or geography, but upon law,—that law which is the expression of men's right reason and good conscience. We, in spite of our failures and imperfections, are devoted to truth and justice. We will not permit tyranny and aggression in our own government and we will not condone it in any other.

The attack upon Pearl Harbor was but a phase of the general criminal conspiracy which produced the assaults upon China, Manchuria, Ethiopia, Denmark, Norway, Czecho-Slovakia, Poland, and other countries. We are at war because we know that there can be no security or freedom or peace anywhere until the perpetrators of such international crimes are brought into subjection to law.